798 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MAPLE HILL APARTMENT, Plaintiff-Appellant,
v.
Samuel R. PIERCE, Jr., Secretary of Housing and Urban
Development, Defendant-Appellee.
 No. 85-1419.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Maple Hill Apartments, a Michigan co-partnership, ("Maple Hill") brought this action to prevent the Secretary of Housing and Urban Development ("HUD") from foreclosing on a $1,290,000.00 mortgage insured by HUD. HUD counterclaimed for foreclosure of the mortage. Maple Hill appeals a grant of summary judgment in favor of HUD on its counterclaim.
 
 FACTS
 
 2
 Maple Hill began construction of an apartment complex in Walled Lake, Michigan in 1972. The construction was financed by a mortgage in favor of Lambrecht Realty Co., a non-party to this suit, in the amount of $1.29 million at a 7% interest rate. HUD insured the mortgage pursuant to Sec. 221(d)(4) of the National Housing Act, 12 U.S.C. Sec. 1715ld(4). In 1974 plaintiff obtained a supplemental mortgage for $100,000. The supplemental mortgage bore a 7.5% interest rate. Moreover, the parties executed an agreement wherein they amended the original mortgage and note to increase the interest rate to 7.5% on the unpaid balance and merge the mortgage and supplemental mortgage. Upon completion of construction in late 1974, Lambrect Realty Co. assigned its interest in the mortgage to the permanent lender' Queens County Savings Bank of Flushing, New York ("Queens"). At the same time, HUD issued the final endorsement of its contract of insurance on the consolidated mortgage notes.
 
 
 3
 When Maple Hill failed to pay its monthly mortgage installment when due on June 1, 1976, Lambrecht Realty Co., on behalf of Queens, made a claim on the contract of mortgage insurance. On September 13, 1976, Queens assigned the mortgage to HUD, and, pursuant to the contract of mortgage insurance, HUD paid Queens $1,342,446.66, the unpaid principal on the loan. HUD became the owner of the mortgages and mortgage notes. HUD did not seek immediate foreclosure, but entered into work-out agreements with plaintiff to remnove the default. Plaintiff failed to meet the schedule of payments agreed upon in the work-out agreements, and in February 1983 HUD gave plaintiff notice of foreclosure. As of April 1983, Maple Hill was indebted to HUD in the amount of $1,751,310.92.
 
 
 4
 Plaintiff filed a complaint in state court to halt the foreclosure and sale of the property and to recover damages against HUD for negligent inspection and supervision of the contruction project and to reform the mortgage to reduce the interest rate and adjust the value of the mortgage to the present worth of the property, alleged to be x about $300,000. HUD removed the case to the United States District Court for the Eastern District of Michigan and filed a counterclaim for judicial foreclosure. The case initially came before the Honorable James P. Churchill. In April 1984 judge Churchill dismissed Maple Hill's clamns against HUD, but gave Maple Hill leave to amend its complaint to allege that it had filed a claim under the Federal Tort Claims Act, 28 U.S.C. 5 1346(b), 2671 et seq. Instead, Maple Hill sought leave to ainend its answer to HUD's counterclaim for foreclosure by adding the following defenses: that HUD's request for foreclosure was barred by the doctrine of laches, that HUD had been negligent in inpecting the project during construction, and that HUD had failed to mitigate its damages. The District Court refused to permit Maple Hill to assert the laches defense, but allowed amendment as to the other two. The case was later transferred to the Honorable Richard F. Suhrheinrich.
 
 
 5
 In April of 1985 the District Court granted HUD summary judgment. The court later granted Maple Hill a stay of the foreclosure pending appeal. The court granted HUD mortgagee-in-possession status.
 
 
 6
 Appellant argues that summary judgment was improperly granted because there were genuine issues of material fact with respect to certain defenses under tort law and under the Administrative Procedure Act, 5 U.S.C. Sec. 701 et seq ("APA"). The first question is whether there were any genuine issues of material fact with respect to appellant's defense of negligent supervision. Maple Hill relies on the doctrine of "the law of the case" to assert that Judge Churchill's grant of leave to plaintiff to amend its affirmative defenses to include negligent supervision precludes Judge Suhrheinrich's O'Grant of summary judgment. Maple Hill bases its argument on the fact that Judge Churchill's order contains the following statement: "If defendant's duty to inspect and approve of the construction was part of the agreement between defendant and the mortgagor, defendant's alleged negligence might conceivably constitute an affirmative defense." Maple Hill contends that this statement amounts to a "ruling" that negligence may constitute a defense to HUD's foreclosure, and that this ruling is the law of the case.
 
 
 7
 HUD correctly points out that a court cannot be prevented from ruling on the merits of an amended claim or defense merely because that same court has granted leave to amend. See Beedy v. Washington Water Power Co., 238 F.2d 123, 127 (9th Cir. 1956); Kostiuk v. Town of Riverhead, 570 F.Supp. 603, 607 (E.D.N.Y. 1983). Moreover, "the law of the case" doctrine allows a court broad discretion to reconsider a prior ruling. Loumar v. Smith, 698 V.2d 759, 762-63 (5th Cir. 1983). The District Court did not abuse its discretion in considering the merits of Maple Hill's affirmative defense despite the prior order allowing the defense to be plead.
 
 
 8
 The District Court did not err in ruling that HUD's alleged negligence did not constitute a defense to foreclosure. HUD could not be legally negligent in inspecting and supervising the property because it owed no duty to Maple Hill. An analysis of the National Housing Act reveals that HUD performs inspections of projects during, contruction for its own benefit as part of its mortgage underwriting function and does not assume a duty to inspect for the benefit of a mortgagor. United States v. Neustadt, 366 U.S. 696, 709 (196t); United States v. Chelsea Towers, Inc., 295 F. Supp. 1242, t247-48 (D. N.J. 1967), appeal dismissed, 404 F.2d 329 (3d Cir. 1968). We concur with the reasoning in Brookside Limited Partnership v. United States, 231 Ct. Cl. 944, 950 (1982), cert. denied, 459 U.S. 1204 (1983) that the inspection fee paid by Maple Hill "was nothing 'more than the cost of obtaining mortgage insurance' " and thus did not create a contractual obligation.
 
 
 9
 Plaintiff relies heavily on Neal v. Bergland, 646 F.2d 1178 (6th Cir. 1981), aff'd sub nom. Block v. Nea 460 U.S. 289 (1983) for the proposition that once HUD undertook to inspect the project, it assumed an obligation to act with reasonable care, according to the good samaritan doctrine. The plaintiff in Bergland obtained a loan from the Farmer's Home Administration to purchase a pre-fabricated home pursuant to the Housing Act of 1949, 42 U.S.C. Sec. 1472, which provides financial assistance to individual home purchasers of low or moderate income residing in rural areas. The Court found that an actionable tort claim could possibly be based upon section 323 of the Restatement (2d) of Torts, the good samaritan doctrine. The District Court distinguished Bergland on the ground that in that case the Court found that Congress intended plaintiff to be the beneficiary of the inspection and assistance offered by FmHA given "plaintiff's particular circumstances." 646 F.2d at 1184. Relying on Neustadt, supra, the District Court concluded that under the National Housing Act, inspection and appraisals performed by HUD are for the protection of the government and its insurance funds. 366 u.S. at 709. The District Court found no evidence that HUD undertook to inspect for Maple Hill's benefit, foreclosing the possibility of a good samaritan argument. We find no error in the District Court's conclusion.
 
 
 10
 Plaintiff next argues that HUD has a statutory obligation to a mortgagor to inspect in a particular way, and that HUD's decision to foreclose is subject to review under the APA. The District Court concluded generally that HUD's decision to foreclose was not arbitrary, capricious or an abuse of discretion or contrary to law. HUD argues that the District Court should not even have reviewed Maple Hill's clai.m under the APA because Maple Hill has shown neither that it suffered a legal wrong nor that it has been adversely affected or aggrieved within the meaning of a relevant statute. As to the first requirement, as already shown, HUD owed no duty to Maple Hill to inspect the project for Maple Hill's benefit. Therefore, there could be no legal wrong. As to the second, the APA does not create a substantive right in itself. See Hill v. United States, 571 F.2d 1098, 1102-03 (9th Cir. 1978). The only relevant statute is the National Housing Act. As mentioned above, inspections under this act are not performed for the benefit of the mortgagor. Maple Hill has no right to review under the APA. Alternatively, the District Court correctly held that the decision to foreclose was not , unlawful, in light of the undisputed default, the attempts at a work-out plan, and the responsibility HUD had to protect the investments of the government.
 
 
 11
 Finally, plaintiff argues that the increase in the interest rate from 7% to 7.5% was illegal and thus that HUD has unclean hands. Maple Hill asserts that the interest rate, in combination with the negligent inspection, allows it a defense of impossibility. HUD correctly notes that this is the first time that Maple Hill has raised a defense of impossibility regarding the interest rate. The District Court addressed the defense of unclean hands vis-a-vis the interest rate and the defense of impossibility vis-a-vis the inspection. The District Court found that in 1972, when the parties entered into the mortgage agreements, the parties intended that the HUD regulations in effect at , the time would govern the transaction. The pertinent regulation provided for a maximum interest rate of 7%. In 1974, when the parties consolidated the mortgage and supplemental mortgage, the maximum rate was 8 1/4%, but the applicable regulation provided that HUD could retain the original rate. However, HUD was under no statutory obligation to retain the original rate. As to a contractual obligation, the District Court found that Maple Hill waived its right to assert a claim to lower the interest rate. The work-out agreements contained the following provision: "By entering into this work-out, mortgagor waives and relinquishes any rights it may have to bring any action or suit against HUD to lower the current interest rate on the mortgage." The District Court correctly found, that Maple Hill could not raise the defense of unclean hands where it entered into negotiated work-out agreements. The impossibility defense is similarly unavailable, whether based on the negligent supervision argument alone, as originally asserted, or in combination with the increase in interest rate.
 
 
 12
 Accordingly, we affirm the decision of the District Court granting summary judgment to HUD.